113 F.3d 1245
 97 CJ C.A.R. 842
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 AMERICAN CONSTITUTIONAL LAW FOUNDATION, INC., Jack Hawkins,
Craig Eley, and Eldon Cooper, Plaintiffs-Appellants,
v.
Natalie MEYER, Individually, and as Secretary of State for
the State of Colorado, Defendant-Appellee.
 No. 94-1145.
 United States Court of Appeals, Tenth Circuit.
 May 29, 1997.
 
 ORDER AND JUDGMENT*
 Before HENRY, Circuit Judge, McKAY, Senior Circuit Judge, and VRATIL, District Judge.**
 PER CURIAM.
 
 
 1
 On September 15, 1992, plaintiffs commenced this action under 42 U.S.C. § 1983 for declaratory and injunctive relief against the Secretary of State of Colorado. On February 24, 1994, the United States District Court for the District of Colorado dismissed plaintiffs' complaint on the grounds of mootness. Plaintiffs appeal.
 
 I. BACKGROUND
 
 2
 Section 1(1), Article V, of the Colorado Constitution reserves to the people of Colorado "the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly." Under Section 1(2) of Article V, to propose a measure by initiative petition, proponents must gather signatures by registered electors in an amount equal to five percent of the total number of votes cast for candidates for the office of secretary of state at the previous general election. We refer to this requirement as the "registered voter requirement." Section 1(6), Article V, outlines a prescribed format for initiative petitions and stipulates that each petition must be supported by an attached affidavit of the circulator, who must also be a registered elector. For the sake of brevity, we refer to this requirement as the "registered circulator requirement."
 
 
 3
 Plaintiffs are proponents of the so-called "Safe Work Place Amendment" to the Colorado Constitution. On August 3, 1992, plaintiffs submitted to the Secretary of State some 71,044 petition signatures--well more than the number required to place the amendment on the ballot for the November 1992 election. On August 25, 1992, however, the Secretary announced that for various reasons--including her conclusion that certain signatures were not those of registered voters--only 41,531 signatures were valid and the proposed amendment did not qualify for the ballot.
 
 
 4
 Plaintiffs disputed the Secretary's conclusion that certain signatures violated the registered voter requirement, and they filed suit in the United States District Court for the District of Colorado. In that case, which is now before us on appeal, plaintiffs sought to enjoin the Secretary from enforcing the registered voter requirement in a manner which eliminated from their petitions valid signatures of registered voters in the State of Colorado.
 
 
 5
 In November 1992, plaintiffs appealed to an administrative law judge in Colorado ("the ALJ") the Secretary's decision that 28,494 signatures violated the registered voter requirement. On February 16, 1993, the ALJ ruled that the Secretary had improperly disallowed some signatures, but that she had properly struck most of them. The ALJ therefore upheld the Secretary's conclusion that the initiative did not qualify for the ballot and the matter went back to the Secretary for review. On June 23, 1993, the Secretary affirmed the ALJ's decision. At the same time, she rejected previously unchallenged signatures on petitions which had been circulated by nonregistered voters in violation of the registered circulator requirement. For reasons which can only be characterized as flagrant forum-shopping, plaintiffs appealed the Secretary's enforcement of the registered voter requirement, but not the Secretary's enforcement of the registered circulator requirement, to the Denver District Court. Instead of pursuing a direct appeal, plaintiffs attacked the Secretary's enforcement of the registered circulator requirement in this case, by filing a verified motion for preliminary and permanent injunctive relief.[1] Before the district court ruled on this motion, the Secretary filed a motion to dismiss plaintiffs' complaint on grounds of mootness, noting that in S.B. 93-135, which became effective May 4, 1993, Colorado had amended the initiative statutes of which plaintiffs complained.
 
 
 6
 On February 24, 1994, the district court granted the Secretary's motion to dismiss, ruling that plaintiffs' claims were moot because S.B. 93-135 amended the initiative procedures and that any past injury would be addressed in the Denver District Court proceedings. On May 26, 1994, the Denver District Court rendered a decision which generally approved the manner in which the Secretary had enforced the registered voter requirement and upheld her decision to keep plaintiffs' constitutional amendment off the ballot. Finally, on June 26, 1995, the Colorado Supreme Court affirmed. McClellan v. Meyer, 900 P.2d 24 (Colo.1995).
 
 II. ANALYSIS
 
 7
 We review de novo an order of dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Gaylor v. United States, 74 F.3d 214, 216 (10th Cir.), cert. denied, 116 S.Ct. 1830 (1996); Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 967 (10th Cir.1994).
 
 
 8
 The focus of the mootness inquiry is whether the controversy continues to "touch[ ] the legal relations of parties having adverse legal interests" in the outcome of the case. DeFunis v. Odegaard, 416 U.S. 312, 317 (1974); Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir.1994), citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990) and Hewitt v. Helms, 482 U.S. 755, 761 (1987). "The burden of demonstrating mootness 'is a heavy one.' " Los Angeles County v. Davis, 440 U.S. 625, 631 (1971), quoting United States v. W.T. Grant Co., 345 U.S. 629, 632-22 (1953). Parties lack a legally cognizable interest in the outcome of a case if "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, ... and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Davis, 440 U.S. at 631 (citations omitted).
 
 
 9
 Applying this standard to the facts before us, we hold that the district court erred in finding that plaintiffs' request for injunctive relief from the registered circulator requirement was moot. In dismissing plaintiffs' complaint, the district court reasoned that "the matters complained of by plaintiffs in this case are now governed by different processes." This holding was factually incorrect because while S.B. 93-135 did amend most of the procedures of which plaintiffs complained, the registered circulator requirement originated in the Colorado Constitution, and S.B. 93-135 did not alter the circulator requirement. The district court also reasoned that "any injury caused in the past ... will be adequately addressed by the Denver District Court, which properly has jurisdiction over the pending appeal of the state administrative proceedings dealing with the secretary of state's disqualification of the petition." However, this prong of the district court's analysis overlooked the fact that plaintiffs had not appealed to the Denver District Court the Secretary's enforcement of the registered circulator requirement.
 
 
 10
 Because the district court's order rested on faulty premises, the order must be reversed unless, as the Secretary urges, it can be justified on other grounds. In that regard, the Secretary argues that the district court properly dismissed plaintiffs' complaint because (1) it was lawfully refusing to conduct appellate review of a state court decision; (2) it was correctly abstaining from the exercise of federal jurisdiction; and (3) principles of res judicata barred relitigation of issues previously litigated between the parties. We disagree.
 
 
 11
 The Secretary first asserts that the district court properly dismissed plaintiffs' complaint, along with the request for injunctive relief on the circulator issue, because federal courts are without authorization to review state court judgments where the relief sought is in the nature of appellate review. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); Anderson v. State of Colorado, 793 F.2d 262, 263 (10th Cir.1986). The Secretary is correct that there is no jurisdiction in the federal district courts and federal courts of appeals to review or reverse a state court judgment--such review may only be had through appeal to the United States Supreme Court. See Facio v. Jones, 929 F.2d 541, 543 (10th Cir.1991). However, this court must nonetheless reject the Secretary's argument because plaintiffs did not seek appellate review of a state court judgment in this case.
 
 
 12
 The Secretary next asserts that the dismissal of plaintiffs' complaint is justified on abstention grounds. Abstention under Railroad Comm'n of Texas v. Pullman, 312 U.S. 496, 500-01 (1941), applies when state law is unclear and a state court's clarification of state law might make a federal court ruling on a constitutional issue unnecessary. Under Pullman abstention, a district court should abstain if three prerequisites are met: (1) an uncertain issue of state law underlies the constitutional claim; (2) the state law issues are amenable to interpretation and such an interpretation may obviate or substantially narrow the need for a federal court ruling on the constitutional issue; and (3) an incorrect decision of state law by the district court would hinder important state law policies. Lehman v. City of Louisville, 967 F.2d 1474, 1478 (10th Cir.1992), citing Vinyard v. King, 655 F.2d 1016, 1018 (10th Cir.1981).
 
 
 13
 Pullman abstention would be inappropriate in this case because the state laws at issue are not unclear and no possible state court ruling (short of a state court ruling on the question of constitutionality) would obviate the need for a determination whether the circulator requirement was constitutional. Moreover, Pullman abstention is the postponement of jurisdiction, not its abdication. Allen v. McCurry, 449 U.S. 90, 101 n. 17 (1980). Under Pullman abstention, the federal court stays its hand until the state courts have conclusively decided all relevant state law issues and then resumes the task of adjudicating any remaining federal issues in the case. See England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 421 (1964). Therefore, if the district court had intended to abstain on Pullman grounds, it would have stayed its hand pending development of the underlying non-constitutional claims in state court--and not dismissed the case outright.
 
 
 14
 Abstention under Younger v. Harris, 401 U.S. 37 (1971), unlike abstention under Pullman, results in outright dismissal rather than postponement. The Younger doctrine is invoked when state proceedings are pending and principles of federalism dictate that the constitutional claims should be raised and decided in state court without the interference of the federal courts. In Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982), the Supreme Court articulated a three-part test for determining whether Younger abstention is appropriate. It held that abstention is appropriate if (1) state proceedings are ongoing, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford adequate opportunity to raise federal questions.[2] Id.
 
 
 15
 For several reasons, the district court decision cannot be characterized as Younger abstention. At the outset, the Younger doctrine is ordinarily raised by the parties, as federal courts do not normally raise it on their own. See Swisher v. Brady, 438 U.S. 204, 213 n. 11 (1978).[3] More importantly, the state proceedings were not pending when plaintiffs filed this case.[4] Generally, Younger precludes federal intervention in ongoing state proceedings. The doctrine has been extended, however, to cases where the federal case came first--as it did in this case. See Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 238 (1984) (state proceeding "pending" under Younger if initiated "before any proceedings of substance on the merits" in federal court); Hicks v. Miranda, 422 U.S. 332, 349 (1975) (same), overruled on other grounds by Mandel v. Bradley, 432 U.S. 173 (1977). So long as the federal litigation is in "an embryonic stage and no contested matter ha[s] been decided," the district court may abstain under Younger. Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975). In this regard, although issuance of a preliminary injunction is a "proceeding of substance" under Younger, see Midkiff, 467 U.S. at 238, a refusal to grant a preliminary injunction is not--unless the court has held extensive hearings on the matter. See Hicks, 422 U.S. at 339-352. In this case, plaintiffs filed suit September 15, 1992. The district court conducted proceedings of substance before it dismissed the case as moot on February 24, 1994. In these circumstances, we cannot characterize the district court's order as proper abstention under Younger.[5]
 
 
 16
 The Secretary finally argues that plaintiffs are barred from bringing this claim because before plaintiffs filed this case, they brought an earlier suit in the same court challenging the constitutionality of the registered circulator requirement. See American Constitutional Law Foundation, Inc. et al. v. Meyer, Case No. 92N69. In that case, the district court enjoined the Secretary from enforcing the registered circulator requirement but later dismissed the case on account of plaintiffs' failure to prosecute--thus abrogating the injunction it had preliminarily issued. The Secretary claims that the order of dismissal in Case No. 92N69 bars relitigation of the registered circulator requirement, on theories of res judicata.
 
 
 17
 Under the doctrine of res judicata, a final judgment on the merits in a previous action precludes the parties from relitigating issues that were or could have been raised in that action. Allen v. McCurry, 449 U.S. 90, 94 (1980); Klein v. Zavaras, 80 F.3d 432, 434 (10th Cir.1996). That doctrine, however, cannot justify the order of dismissal in this case. First, the order of dismissal in Case No. 92N69 is not before us and we have no way of ascertaining whether it was an order on the merits under Rule 41(b) of the Federal Rules of Civil Procedure. More importantly, the Secretary did not disallow signatures obtained by non-registered circulators until after Case No. 92N69 had been dismissed; therefore plaintiffs were unable to challenge her action in Case No. 92N69 and the Secretary's res judicata argument misses the mark.
 
 
 18
 The 1992 election is long past, but on this record we cannot foreclose the possibility that the alleged violation will recur or conclude that interim events have "completely and irrevocably" eradicated the effects of the alleged violation. We therefore remand for further consideration of the issue of mootness. In the final analysis, however, we also note that the appropriate analytical tools may yet be found in the claim preclusion doctrine.
 
 
 19
 As noted above, plaintiffs appealed to the Denver District Court and subsequently to the Colorado Supreme Court the Secretary's manner of enforcing the registered voter requirement. Plaintiffs could have included in that appeal their claim that Secretary had violated the Constitution by enforcing the registered circulator requirement. For reasons of their own, they chose not to do so.
 
 
 20
 In Allen v. McCurry, 449 U.S. 90, 96 (1980), the Supreme Court held that a federal court must give a state court judgment the preclusive effect that it would be entitled to receive under the law of the state in which the judgment was rendered. The Colorado Supreme Court has applied the rule of Allen v. McCurry, holding that res judicata bars relitigation not only of issues actually decided, but also of issues that might have been decided. Pomeroy v. Waitkus, 517 P.2d 396, 399 (1973). Colorado also gives preclusive effect to a state court judgment that reviews an administrative determination. See Bolling v. City & County of Denver, 790 F.2d 67, 68 (10th Cir.1986), citing Norby v. City of Boulder, 577 P.2d 277, 280-81 (Colo.1978) (en banc). Indeed, when a party files an action under Colo.R.Civ.P. 106(a)(4) to review an administrative determination, Colorado public policy requires the party to join all claims in one action. Powers v. Board of County Commissioners, 651 P.2d 463, 464 (Colo.Ct.App.1982). A plaintiff need not seek judicial review of an administrative decision, but if he or she does, Colorado law requires that all "constitutional and statutory challenges must be litigated in one action...." Id.
 
 
 21
 Since Allen v. McCurry, the Supreme Court has held in the context of a § 1983 action that state court judgments are entitled to res judicata effect not only as to issues actually litigated in state court but also as to issues that could have been raised in an earlier state proceeding. Migra v. Warren City School District Bd. of Educ., 465 U.S. 75, 83-85 (1984). The difference between this case and Migra is that here, plaintiffs proceeded first in federal court. Several cases emphasize that if a plaintiff appropriately invokes the jurisdiction of the federal court, that party should be able to litigate there. "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." England, 375 U.S. at 415, quoting Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 (1909). Plaintiffs who liberally engage in tactical claim-splitting, however, cannot disregard the note of caution we sounded in Carter v. City of Emporia, Kansas, 815 F.2d 617 (10th Cir.1987), as follows:
 
 
 22
 Nothing in our decisions before Migra suggests that plaintiffs may freely split a cause of action between federal and state courts and pursue both actions without risking claim preclusion. We recognized the claim preclusive effect of prior state court judgments on a subsequent § 1983 action in federal court in Spence v. Latting in 1975.
 
 
 23
 Id. at 621, citing Spence v. Latting, 512 F.2d 93,98-99 (10th Cir.), cert. denied, 423 U.S. 896 (1975). See also Rogers v. Desiderio, 58 F.3d 299, 300 (7th Cir.1995) (where plaintiffs split claim to obtain best outcome of different proceedings, judges award plaintiffs not the better outcome, but the first outcome: "whichever suit goes to judgment first is dispositive, and the doctrine of claim preclusion (res judicata) requires the other court to dismiss the litigation").
 
 
 24
 At this point, the judgment of the Colorado Supreme Court may bar plaintiffs' federal claim under the foregoing authorities. On remand, the district court should gather the information necessary to properly evaluate this issue as well as the issue of mootness.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, the district court's order of dismissal is REVERSED and REMANDED for further proceedings not inconsistent with this order.
 
 Entered for the Court
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 **
 The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 We advisedly characterize plaintiffs' motion for injunctive relief as a resurrection of the registered circulator issue. This case originally focused on the registered voter requirement rather than the registered circulator requirement--which was the subject of active litigation between the parties in another case. Plaintiffs' complaint in this case did mention the circulator issue, however, and it broadly alleged an infringement of First Amendment rights on account of the registered circulator requirement. In fact, the complaint's first claim for injunctive relief specifically stated that the registered circulator requirement violated plaintiffs' right to petition the government in violation of the Constitution and prayed for a permanent injunction prohibiting the Secretary from enforcing it
 
 
 [2]
 Under Middlesex, it is sufficient that a federal challenge may be raised in state court judicial review of administrative proceedings. Middlesex, 457 U.S. at 436
 
 
 [3]
 A state may waive the Younger challenge to the federal court's jurisdiction by failing to raise it. See, e.g., Association of Community Organizations for Reform Now (ACORN) v. Municipality of Golden, Colorado, 744 F.2d 739, 742-43 n. 2 (10th Cir.1984) (where city did not raise abstention argument, it voluntarily submitted to a federal forum and therefore "principles of comity do not demand that the federal court force the case back into the State's own system"). However, this usually occurs when the state expressly urges the court to adjudicate the merits of the constitutional claim. See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 626 (1986); Morrow v. Winslow, 94 F.3d 1386, 1390 (10th Cir.1996). In Morrow, this Court found that it could raise the abstention issue itself when the issue had not been raised below. Id. at 1390-92
 
 
 [4]
 The court assumes for purposes of this opinion (and the parties do not argue otherwise) that this case implicates the state's important interests in its voting process and that plaintiffs had an adequate opportunity in the state proceedings to raise their federal question regarding the circulator requirement
 
 
 [5]
 Moreover, the court's research has found no case in which an appellate court has characterized or construed a district court's action as abstention where the district judge did not so characterize it