Donetta DAVIDSON, Colorado Secretary
of State, and George Dibble,
Defendants/Appellants,

v.

Molly McCLELLAN; Charles Mitchell;
Marilyn Ferrari; Al Ferrari; Marie Car-
ney; Patricia Farmer; Mary Blue; Ani-
ta Gail; Jackie Ragno; Jack Hawkins;
and Craig Eley, Plaintiffs/Appellees.

No. 99SA240.

Supreme Court of Colorado,
En Banc.

Jan. 22, 2001.

Ken Salazar, Attorney General, Maurice G.
Knaizer, Deputy Attorney General, Denver,
CO, Attorney for Defendant–Appellant Do-
netta Davidson.

Mark Bender, John W. Berry, Denver, CO,
Attorneys for Defendant–Appellant George
Dibble.

Law Office of Neil O'Toole, P.C., Neil D.
O'Toole, Denver, CO, Attorney for Plaintiffs–
Appellees.

Justice COATS delivered the Opinion of the Court.

The Colorado Secretary of State and a citizen-opponent of the 1992 "Safe Work Place Amendment" initiative appeal from the June 1999 order of the Denver District Court, granting a motion to vacate the court's judgment of May 26, 1994, and ordering the Secretary to reexamine the petitions gathered by nonregistered circulators in 1992. The district court's initial judgment affirming the Secretary's decision to exclude the initiative from the 1992 ballot was itself affirmed by this court. *McClellan v. Meyer*, 900 P.2d 24 (Colo.1995). Under the circumstances of this case, the subsequent decision of the United States Supreme Court in *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), holding Colorado's registered circulator requirement unconstitutional, was not a sufficient basis to vacate the final judgment pursuant to C.R.C.P. 60(b)(5), and therefore the order of the district court is reversed.

I.

The dispute in this case involved Colorado constitutional and statutory provisions as they existed in 1992, reserving to the people of the state the power to propose laws and amendments to the state constitution by initiative petition and specifying the way in which that could be done. Among other things, these provisions required that the proponents gather a certain number of signatures of registered voters (registered voter requirement) supporting placement of the measure on the ballot, Colo. Const., art. V, § 1(2); § 1–40–106(2)(a), 1B C.R.S. (Supp. 1992), and that the circulators of the petitions themselves be registered voters (registered circulator requirement), Colo. Const., art. V, § 1(6); § 1–40–106(3), 1B C.R.S. (Supp. 1992). The common feature of this case and the cases relied on by the Denver District Court in granting the plaintiffs' motion to vacate was a challenge to either the validity or application of various requirements for successfully placing a citizen-initiated measure on the Colorado election ballot.

This particular case arose from the Secretary of State's determination that an insufficient number of valid signatures supported the proposed "Safe Work Place Amendment" to Article II of the Colorado Constitution, presented to her on August 3, 1992. The proponents of the initiative protested this decision according to Colorado law, *see* § 1–40–109(1)(c), 1B C.R.S. (Supp.1992), and the state review proceedings followed an unremarkable path. The matter was assigned for hearing to an administrative law judge, whose conclusion that the signatures were insufficient was affirmed by a final decision of the Secretary of State. Judicial review of that decision was sought in the Denver District Court, and the district court's judgment affirming the Secretary was in turn affirmed by this court on direct appeal. However, because some of the plaintiffs in the case, and others with similar interests and objectives, challenged some of the same provisions and their later amendments in the federal courts in at least three different cases, the procedural history of the entire set of challenges to Colorado's initiative process is quite extensive and convoluted.

On August 25, 1992, when the Secretary initially struck a number of signatures on various statutory grounds, she was already enjoined from enforcing the registered circulator requirement by an injunction in an unrelated federal case, *Am. Constitutional Law Found. v. Meyer*, No. 92–N–69 (D.Colo. Jan. 1992). She therefore did not exclude signatures gathered by unregistered circulators at that time. The plaintiffs filed a timely protest to the Secretary's decision according to Colorado law, but also, on September 15, 1992, some of the proponents of the initiative, along with a public interest organization that supports direct democracy, called the American Constitutional Law Foundation (ACLF), filed an action for declaratory and injunctive relief in the federal court, challenging the provisions under which the Secretary had excluded signatures from the "Safe Work Place Amendment" petitions. *See Am. Constitutional Law Found., Inc. v. Meyer*, No. 92–N–1828 (D.Colo.1992).[1]

1. The federal district court immediately denied the plaintiffs' request for a preliminary injunc-

On February 16, 1993, the administrative law judge hearing the protest issued a decision, counting some of the signatures rejected initially by the Secretary but nevertheless affirming her decision to exclude the initiative from the ballot. Like the Secretary, the ALJ also did not enforce the registered circulator requirement. However, on February 17, 1993, the federal district court dismissed case no. 92–N–69 for failure of the plaintiffs to prosecute, thereby dissolving its injunction against enforcing the registered circulator requirement. Therefore, when the Secretary issued her final opinion on the "Safe Work Place Amendment" on June 23, 1993, she not only affirmed the ALJ's count but also excluded an additional number of signatures as violating the registered circulator requirement. The proponents of the initiative sought review of the Secretary's final agency action in the Denver District Court.

In July 1993, several of the proponents of the "Safe Work Place Amendment," and other individuals and groups unrelated to the "Safe Work Place Amendment," filed a new action for declaratory and injunctive relief in the federal court, then designated *American Constitutional Law Foundation v. Meyer*, No. 93–M–1467.[2] This new federal action challenged a new statute amending Colorado's requirements for citizen-initiated measures. *See* SB 93–135, ch. 183, sec. 1, §§ 1–40–101 to 133, 1993 Colo. Sess. Laws 676, 676–96. In addition, in August 1993, the plaintiffs in case no. 92–N–1828, the federal case filed contemporaneously with the Secretary's initial exclusion of signatures from the "Safe Work Place Amendment" petitions, moved to enjoin the Secretary from enforcing the registered circulator requirement[3], the former injunction against enforcing this provision having been dismissed along with case no. 92–N–69 in February.

On May 16, 1994, in the order at issue in this appeal, the Denver District Court affirmed the Secretary's determination that the "Safe Work Place Amendment" petitions lacked sufficient signatures, although it disagreed about a number of her exclusions, and the plaintiffs appealed that decision directly to this court. While the proponents challenged a number of the practices and standards used by the Secretary, they did not challenge the constitutionality of the registered circulator requirement. Instead, they limited themselves in this regard to a claim that the Secretary was bound by the federal injunction that existed at the time the signatures were presented, and that enforcing the registered circulation requirement after the injunction was lifted amounted to application of an ex post facto law. About one year later, on June 26, 1995, this court affirmed the judgment of the Denver District Court. *McClellan v. Meyer*, 900 P.2d 24 (Colo.1995).

While *McClellan v. Meyer*[4] was pending in the Colorado courts, both of the remaining federal cases challenging the Colorado initiative provisions were resolved by federal district courts in favor of the Secretary. In February 1994, the federal district court dismissed case no. 92–N–1828 on the grounds that the statutory amendments in SB 93–135 rendered the case moot. In November 1994, the federal district court in case no. 93–M–1467 ruled that the registered circulator requirement did not violate the United States Constitution. However, this did not end the matter.

On June 23, 1997, almost two years after this court's holding in *McClellan v. Meyer*, the Tenth Circuit Court of Appeals reversed

tion, and the plaintiffs appealed. In February 1993, the Tenth Circuit Court of Appeals dismissed the plaintiffs' appeal for failure to prosecute.

2. This case later was entitled *American Constitutional Law Foundation v. Buckley*, due to the election of Vikki Buckley as Colorado's Secretary of State in November 1994.

3. In a subsequent unpublished opinion, when reviewing the procedural history of 92–N–1828, the Tenth Circuit indicated that it "advisedly" characterized the plaintiffs' motion for injunctive relief as a "resurrection of the registered circulator issue" because the case originally focused on the registered voter requirement rather than the registered circulator requirement. *Am. Constitutional Law Found. v. Meyer*, No. 94–1145, slip op. at *4, 113 F.3d 1245 (10th Cir. May 29, 1997)(unpublished).

4. This is the same case presently before the court, although the case is now entitled *Davidson v. McClellan*, reflecting the current Colorado Secretary of State, Donetta Davidson.

the dismissal of federal case no. 92–N–1828 and remanded for further proceedings, holding that although the plaintiffs' First Amendment claim against Colorado's registered circulator requirement should perhaps be barred for their failure to raise it in the Colorado courts, the case should not have been dismissed either as moot or on abstention grounds. *Am. Constitutional Law Found. v. Meyer,* No. 94–1145, slip op. at *11–12, 1997 WL 282874 (10th Cir. May 29, 1997)(unpublished). One month later, on June 28, 1997, the Tenth Circuit also reversed the federal district court's judgment in case no. 93–M–1467, holding instead that Colorado's registered circulator requirement was indeed unconstitutional. *See Am. Constitutional Law Found. v. Meyer,* 120 F.3d 1092, 1100 (1997). It was this holding that was eventually upheld by the United States Supreme Court in January 1999, nearly four years after a final judgment in the instant case. *Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999).

In March 1999, the federal district court ruled in favor of the plaintiffs in the remanded case no. 92–M–1828, on the basis of the holding in *Buckley.* It granted the requested declaratory relief concerning Colorado's registered circulator requirement, echoing the Supreme Court, but did not grant injunctive relief against the Secretary. The proponents of the "Safe Work Place Amendment" therefore returned to the Denver District Court in April 1999, moving pursuant to C.R.C.P. 60(b) to vacate the judgment in the instant case on the basis of the federal district court action in case no. 92–N–1828 and the United States Supreme Court's holding in *Buckley.*

Although the Denver District Court rejected their claim for relief pursuant to C.R.C.P. 60(b)(4) because the judgment in this case was not applied prospectively, it granted the motion on the basis of rule 60(b)(5). Recognizing that the issue decided by the United States Supreme Court was never presented to the Colorado courts as a result of the plaintiffs' "flagrant forum shopping," the district court nevertheless considered itself "bound by the directives of the United States Supreme Court," and found that the opinion of that Court, "potentially invalidating one of the bases for the judgment" in this case, amounted to "any other reason justifying relief" pursuant to C.R.C.P. 60(b)(5). The district court remanded the case to the Secretary with directions that she reexamine the petitions gathered by nonregistered circulators and determine whether the remaining signatures would be sufficient for placement on the ballot.

This court denied the Secretary's petition for relief pursuant to C.A.R. 21 on June 14, 1999.[5] The defendants then filed a notice of appeal directly in this court on July 27, 1999.[6]

## II.

The importance of finality in the adjudication of controversies and the conclusiveness of judgments is too well accepted to require great discussion. *See E.J.R. v. Dist. Court,* 892 P.2d 222, 226 (Colo.1995). It is essential, for practical reasons as well as for fundamental fairness, that there be a point at which litigation reaches a conclusion and that parties be permitted to rely on the outcome. *See* 1 Abraham Freeman, *Law of Judgments* § 305 at 602–3 (1925)("The law aims to invest judicial transactions with the utmost perma-

5. On April 26, 2000, the Tenth Circuit dismissed the Secretary's appeal of the federal district court's ruling, finding that the federal case was now moot as the state district court had granted the 60(b) motion and the Colorado Supreme Court had denied the Secretary's requested relief. In so holding, the Tenth Circuit apparently relied on this court's denial of the Secretary's original proceeding, and was unaware of the direct appeal still pending before this court.

6. The defendants appeal pursuant to sections 1–40–117, –118, –119, 1 C.R.S. (2000), which provide for appeal directly to this court following a hearing under the "protest" provisions. Although we choose to consider the appeal, *see Colo. Ass'n of Pub. Employees v. Dep't of Highways,* 809 P.2d 988, 990 n. 1 (Colo.1991); *Thomas v. County Court,* 198 Colo. 87, 89–90, 596 P.2d 768, 770 (1979), we do not intend to hold here either that this appeal comes within the provisions of sections –117 to –119, or that a party adversely affected by an order vacating a judgment pursuant to C.R.C.P. 60(b) is entitled to appeal to the appellate court that affirmed the initial judgment.

nency consistent with justice.... Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown."). . Nevertheless, it is also clear that under certain limited circumstances even the principle of finality must give way to overriding concerns for truth and equity.

Rule 60 of the Colorado Rules of Civil Procedure, which is derived from and largely mirrors Rule 60 of the federal rules,[7] "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Canton Oil Corp. v. Dist. Court,* 731 P.2d 687, 694 (Colo.1987) (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2851, at 140 (1978)). It does so by permitting courts to relieve parties from final judgments, "upon such terms as are just," for certain, specifically enumerated reasons, including mistake, inadvertence, surprise or excusable neglect; fraud, misrepresentation, or other improper conduct by an adverse party; that the judgment is void; or that the judgment has prospective application or is no longer equitable because it has already been satisfied or discharged. C.R.C.P. 60(b)(1)-(4). In addition, the rule includes a residuary provision, allowing relief for "any other reasons justifying relief from the operation of the judgment." C.R.C.P. 60(b)(5). However, to prevent this residuary provision from swallowing the enumerated reasons and subverting the principle of finality, it has been construed to apply only to situations not covered by the enumerated provisions and only in extreme situations or extraordinary circumstances. *Canton Oil,* 731 P.2d at 693–94; *Cavanaugh v. State Dep't of Soc. Servs.,* 644 P.2d 1, 5 (Colo.), *appeal dismissed,* 459 U.S. 1011, 103 S.Ct. 367, 74 L.Ed.2d 504 (1982); *Atlas Constr. Co. v. Dist. Court,* 197 Colo. 66, 69, 589 P.2d 953, 956 (1979).

It is also widely accepted that a change in decisional law after a judgment has become final is not, in itself, a sufficient ground for reopening that judgment pursuant to the residuary provision. *See Lubben v. Selective Serv. Sys. Local Bd.,* 453 F.2d 645, 650–51 (1st Cir.1972); *Biggins v. Hazen Paper Co.,* 111 F.3d 205, 211–12 (1st Cir.), *cert. denied,* 522 U.S. 952, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997); *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272–73 (2d Cir.1994); *Morris v. Horn,* 187 F.3d 333, 341–42 (3d Cir.1999); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir.1993); *Batts v. Tow-Motor Forklift Co.,* 66 F.3d 743, 749 (5th Cir.1995), *cert. denied,* 517 U.S. 1221, 116 S.Ct. 1851, 134 L.Ed.2d 951 (1996); *Berryhill v. United States,* 199 F.2d 217, 218–19 (6th Cir.1952); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv.,* 131 F.3d 625, 629 (7th Cir.1997); *Kansas Pub. Employees Retirement Sys. v. Reimer & Koger Assocs.,* 194 F.3d 922 (8th Cir.1999), *cert. denied,* 529 U.S. 1004, 120 S.Ct. 1268, 146 L.Ed.2d 218 (2000); *Clifton v. Attorney General,* 997 F.2d 660, 665 (9th Cir.1993); *Collins v.. City of Wichita,* 254 F.2d 837, 839 (10th Cir.1958); *Ritter v. Smith,* 811 F.2d 1398, 1401 (11th Cir.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); *see also* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2864, p. 223 (1973 & Supp. 1992); 12 James Wm. Moore, *Moore's Federal Practice* § 60–48(5), at 60–180—60–183 (3d ed. 1997 & Supp.2000).[8]

7. Federal Rule of Civil Procedure 60(b) differs in some minor respects from Colorado's Rule 60(b). For example, Colorado's Rule 60(b)(5) parallels Federal Rule 60(b)(6), because the federal rules recognize "newly discovered evidence" as an additional basis upon which judgment can be reopened under 60(b) whereas the Colorado rules do not. Other minor discrepancies involve the length of time a party has to file a 60(b) motion in federal as opposed to state court. *Canton Oil Corp. v. Dist. Court,* 731 P.2d 687, 694 n. 6. (Colo.1987).

8. In a few decisions the Tenth Circuit has insinuated that a change in relevant case law does qualify as "extraordinary circumstances" under Federal Rule 60(b)(6). *See Dowell v. Bd. of Educ. of Oklahoma City,* 8 F.3d 1501, 1509 (10th Cir. 1993); *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir.1989). These cases, however, have been characterized as misconstruing and broadening an earlier decision of the Circuit, *Pierce v. Cook & Co., Inc.,* 518 F.2d 720, 722–724 (10th Cir.1975), and as being clearly erroneous and inconsistent with the vast majority of existing federal case law. *Moore, supra,* § 60–48(5)(c), at 60–183.

This general principle applies regardless of the court responsible for the change, *Morris v. Horn,* 187 F.3d 333, 341–42 (3d Cir.1999)(recognizing that even a subsequent change resulting from an appeal in a similar case to the Supreme Court will not warrant relief under 60(b)(6) where parties at issue did not appeal their own case); *DeWeerth v. Baldinger,* 38 F.3d 1266, 1272–74 (2d Cir. 1994)(change in applicable rule of federal law by Supreme Court will not necessarily provide grounds for relief under Rule 60(b)(6)), and even though the change in decisional law involves the constitutionality of a statute, *see Batts v. Tow–Motor Fork Lift Co.,* 66 F.3d at 749 (recognizing that even a subsequent declaration that statute was unconstitutional does not constitute extraordinary circumstances to vacate judgment). The law is presumed to be in a constant state of revision and change, *see E.B. Jones Constr. v. City & County of Denver,* 717 P.2d 1009, 1013–14 (Colo.App.1986), and therefore if a subsequent change in the decisional law were itself sufficient, there could be little confidence in the finality of a judgment. Furthermore, such a common occurrence could easily have been included in the specifically enumerated grounds of the rule if it were intended to be a sufficient basis for vacating a judgment.

Colorado case law similarly has made clear that a mere change in decisional law will not constitute the extraordinary circumstances necessary to vacate a final judgment. *See, e.g., State Farm Mut. Auto. Ins. Co. v. McMillan,* 925 P.2d 785, 790–91 (Colo.1996); *E.B. Jones Constr.,* 717 P.2d at 1013–14 (finding that the mere appearance of a new case resolving an issue litigated in the underlying trial, without more, does not constitute extraordinary circumstances justifying reopening and vacating a final judgment pursuant to C.R.C.P. 60(b)(4) or (5)). Even in the unusual case in which this court has found a change in the understanding of a rule of law to form part of the basis for vacating a judgment, it has emphasized the insufficiency of that fact alone. In *McMillan* this court found a change in law sufficient to constitute the extraordinary circumstances required for relief pursuant to C.R.C.P. 60(b)(5) only because the trial court was also considering a question of first impression; because the same issue was already on appeal in another case, the outcome of which all parties agreed would be dispositive; and because neither party was prejudiced by reconsideration of the trial court's earlier ruling. *McMillan,* 925 P.2d at 791.

While the holding of *McMillan* did not purport to describe the only circumstances in which a change in decisional law could justify vacating a final judgment, it exemplified the extraordinary nature of the circumstances required to overcome the compelling need for finality. Rather than a mere change in decisional law, the *McMillan* holding rested firmly on the fact that the trial court entered judgment exclusively on the basis of a preliminary court of appeals' opinion that was reversed and therefore never became the final judgment of that court. Where, for reasons of timing, resources, and convenience, the parties agreed, with the trial court's approval, to be bound by the outcome of a related case, but the trial court entered a judgment contrary to the ultimate outcome of that case, the equities clearly favored vacating the judgment.

III.

█ The grant or denial of a C.R.C.P. 60(b) motion lies within the sound discretion of the trial court and, absent an abuse of that discretion, will not be disturbed on appeal. *McMillan,* 925 P.2d at 790–91; *E.B. Jones Constr.,* 717 P.2d at 1013–14.[9] A motion

9. The federal courts, and even the United States Supreme Court, appear to have construed the corresponding federal rule 60(b) as an exception to the "law of the case" doctrine and do not require leave of the higher court before vacating the final judgment in a decided case. *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976); *see also DeWeerth,* 38 F.3d at 1271; *LSLJ P'ship v. Frito Lay, Inc.,* 920 F.2d 476, 478–79 (7th Cir.1990); *Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 932 (5th Cir.1976); *Wilkin v. Sunbeam Corp.,* 405 F.2d 165, 166 (10th Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 464 (1967); *Von Wedel v. McGrath,* 100 F.Supp. 434, 435–36 (D.N.J.1951), *aff'd,* 194 F.2d 1013, 1014 (3d Cir.1952); Wright & Miller, *supra,* § 2873 at 437–39. Where a trial court's ruling, as here, is an abuse of discretion, it is unnecessary for us to consider additional limitations that may exist to C.R.C.P. 60(b) motions

must nevertheless meet the requirements of the rule in order to be subject to exercise of the court's discretion. Especially with respect to the residuary provision of C.R.C.P. 60(b)(5), which has been narrowed to include only extreme situations and extraordinary circumstances, a trial court's ruling must be reviewed in light of the purposes of the rule and the importance to be accorded the principle of finality.

In this case the motion of the plaintiffs did not satisfy the standards articulated in *McMillan,* and the circumstances and conduct of the plaintiffs demonstrate that the interests of equity and justice do not require vacating the earlier final judgment. Specifically, although *Buckley* and the instant case share some of the same parties, the two cases share virtually none of the decisive characteristics of *McMillan.*

Here, the matter of first impression resolved by the Supreme Court was not before the trial court precisely because the plaintiffs deliberately chose not to litigate the constitutionality of the registered circulator requirement in the Colorado courts. Here there was no agreement among the parties and court to abide by the outcome of a case further along the appellate path, as in *McMillan.* Rather, the defendants actually opposed, and the trial court denied, the plaintiffs' motion to wait for the outcome of their federal litigation. Furthermore, the trial court never relied on any ruling of the federal court, much less a preliminary ruling that was subsequently reversed. Finally, prejudice would result from reopening the judgment and ordering the Secretary to reexamine the seven-year-old petitions. The Secretary has asserted that her office destroyed the petitions in reliance on this court's final judgment in 1995, and therefore they cannot be reexamined.[10] Even the federal district court did not order such a remedy.

Furthermore, the trial court clearly erred in considering itself obligated to apply the United States Supreme Court's *Buckley* decision to this case. Like the federal district court in 92–N–1828, the Supreme Court declared the law in the case before it. It neither mandated the reopening of cases that had become final in reliance on the presumed constitutionality of the registered circulator provision, nor conducted the balancing of the demands of finality and justice, that such a mandate would require. Whether or not, as suggested by the Tenth Circuit, the plaintiffs would actually have been precluded from raising this claim in subsequent litigation by their failure to raise it in this case, *see Am. Constitutional Law Found. v. Meyer,* No. 94–1145, slip op. at *11–12, 1997 WL 282874 it is at least clear that they could have raised the issue in the Colorado courts and chose not to do so for reasons of their own. By depriving the Colorado courts of an opportunity to decide the constitutionality of the state's own law, in a pending controversy, the plaintiffs were responsible for the resulting delay and prejudice. These circumstances do not amount to extraordinary circumstances permitting the reopening of final judgments in the interests of equity and justice.

IV.

In sum, the district court erred in considering itself obligated to apply the decision of the United States Supreme Court, even in a case with some of the same parties and involving related issues, to reopen the final judgment in this case. Changes in decisional law, even by the Supreme Court and even involving constitutionality, do not necessarily amount to the extraordinary circumstances required for relief pursuant to C.R.C.P. 60(b)(5). Because the circumstances of this case neither fall within the rule of *McMillan,* nor otherwise amount to the extreme situation or extraordinary circumstances needed to justify vacating a final

concerning judgments that have been affirmed by higher courts.

10. It is unnecessary to decide, and we express no opinion, whether Colorado law would permit the initiative to be considered by voters at an election so far removed from the one for which signatures were gathered, even if the petitions could be reexamined and there were sufficient signatures by current standards.

judgment, the judgment of the district court is reversed.