In re Oren L. BENTON, as trustee
for June Adams Q–Tip Trust,
Plaintiff,

v.

John R. ADAMS, Defendant/Third
Party Plaintiff,

and

Oren L. Benton, Third Party Defendant.

No. 02SA158.

Supreme Court of Colorado,
En Banc.

Oct. 15, 2002.

[black redaction block]

Thomas C. Seawell, Denver, Colorado, Attorney for Petitioner John R. Adams.

Oren L. Benton, Denver, Colorado, Pro Se Respondent.

Lottner Rubin Fishman Brown & Saul, P.C., Curt Todd, Denver, Colorado, Attorneys for Respondent June Adams Kilkenny.

Justice HOBBS delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we issued a rule to show cause to review the trial court's denial of petitioner John Adams' motion for leave to amend his answer, add counterclaims, and join a third party to make a claim against her through interpleader.

We now make the rule absolute, holding that (1) the trial court erred as a matter of law in determining that the interpleader amendment is futile, and (2) the trial court abused its discretion in denying leave to amend on grounds of delay and prejudice in the case.

Although we generally defer to trial courts in their case management decisions, this case is an exception. Nearly a year passed without the case proceeding beyond the complaint and answer phase. While we understand the trial court's desire to move this case toward completion, the trial court should have not expedited the case by denying Adams leave to amend. Adams' interpleader was not futile and the prior lengthy delay in the case was not attributable to him. He offered his answer amendments in a timely manner, and the trial court should have allowed them. Up to that time, virtually nothing had occurred to move the case to trial. No case management order had been entered. No discovery had occurred. Adams made sufficient allegations setting forth a reasonable belief that he would be exposed to double liability for the same obligation if the trial court would not allow his answer amendments. Under the circumstances, we order the trial court to allow Adams' answer amendments.

I.

This case arises from the establishment of the June Adams Qualified Terminable Interest Property Trust in 1983. The Trust's two trustees, John R. Adams (Adams) and Oren Lee Benton (Benton), are parties to the case.[1] Although the complaint did not name the sole beneficiary of the trust, June Adams Kilkenny (Kilkenny), she has filed briefs in this Court—as she did in the trial court—resisting Adams' attempt to add her as a party.

The Trust in 1986 through then co-trustees Benton, Adams, and David Carmichael, and by the agreement of Kilkenny, exchanged all of the assets of the Trust for a special class C limited partnership interest in Energy Fuels, Ltd. ("EFL interest"), a company Adams controlled at that time. The partnership interest included an agreed upon capital account and entitled the Trust to monthly guaranteed payments. Adams agreed to guarantee EFL's obligations to the trust ("1986 Guarantee").

Adams in 1991 transferred EFL to a Benton controlled partnership. In connection with this transaction, Benton agreed to indemnify Adams for all expenses paid pursuant to Adams' 1986 Guarantee ("Benton Indemnification"). EFL made the required payments to the Trust until March 1995, when it filed a bankruptcy petition. Benton and his other related entities filed for bankruptcy at the same time. When EFL filed for bankruptcy and ceased making payments, Adams' obligations under the 1986 Guarantee effectively became the only asset of the Trust.

Adams failed to meet his obligations to the trust, prompting Kilkenny to file a lawsuit against him. In a September 1997 Confiden-

---

1. The Trust agreement provides for a third trustee, but when the third trustee resigned in 1995 no one replaced him.

tial Settlement Agreement ("Settlement Agreement"), Adams and Kilkenny resolved that suit. Pursuant to the Settlement Agreement, Adams has been making payments directly to Kilkenny. In return for Adams' performance under the Settlement Agreement, Kilkenny released Adams from liability to the Trust.

Benton filed the present lawsuit in his individual capacity, rather than as trustee, to compel Adams to make payments to the Trust under the 1986 Guarantee. Adams responded on April 19, 2001 by filing a motion to dismiss, arguing that Benton lacked standing to sue in his individual capacity. Adams also filed a third-party complaint against Benton, individually, asserting an indemnity claim against him based on the Benton Indemnification.

Benton had filed his complaint on February 28, 2001. Without holding a hearing, the trial court on June 26, 2002, denied Adams' motion to dismiss and granted the motion Benton had filed to amend his complaint to bring the action in his trustee capacity. C.R.C.P. 121 § 1–15(5) provides in relevant part that "[w]henever the court enters an order denying or granting a motion without a hearing, all parties shall be forthwith notified by the court of such order." The clerk's entry of the trial court's minute order shows that notice of this order went to Adams but not to Benton or his counsel.

With leave of the court, Benton's counsel withdrew from representing him at the end of July of 2001. Benton then proceeded pro se and did not check on the status of the court's ruling regarding Adams' motion to dismiss and Benton's motion to amend the complaint. The trial court entered an order to show cause on November 11, 2001 why the case should not be dismissed for lack of prosecution. C.R.C.P. 121 § 1–10(2) provides, in pertinent part:

The court, on its own motion, may dismiss any action not prosecuted with due diligence, upon 30 days' notice in writing to each attorney of record and each appearing party not represented by counsel, or require the parties to show cause in writing why the case should not be dismissed.

Benton responded to the show cause order on the basis that he had no notice of the trial court's order granting him leave to amend his complaint. On December 19, 2001, the court allowed Benton to proceed with the lawsuit.

On January 3, 2002, Benton filed his Amended Verified Complaint, naming himself as trustee in bringing the action against Adams. On January 24, 2002, Adams filed his Answer to the Amended Verified Complaint. On February 3, 2002, Adams sought leave to file an amended answer to (1) assert an interpleader claim against Benton as trustee, and Kilkenny, individually, asserting that Benton's lawsuit exposed him to double liability on the same obligation, because Benton's suit sought to recover on a liability that Adams had already settled with Kilkenny;[2] (2) join Kilkenny as an additional party so that he could assert a claim against her; (3) lodge four affirmative defenses to Benton's claims; and (4) amend the third-party complaint against Benton, individually, for indemnity by Benton for the claims Benton asserted in the Amended Verified Complaint.

The trial court ruled that Adams' answer amendments failed to state a claim against Kilkenny and would cause prejudice and delay. The trial court's ruling states as follows, in its entirety:

Courts may properly deny leave because of delay, undue expense or other demonstrable prejudice to an opposing party. In this matter there is both delay and prejudice that would result. Over one year has elapsed since Benton has commenced this

---

2. Adams designated the interpleader claim as a counterclaim against Benton, trustee, and as a third-party complaint against Kilkenny. Before the trial court ruled on Adams' motion for leave, Adams asked the court to consider his claim against Kilkenny as a cross claim rather than a third-party complaint, and to join Kilkenny as a defendant, rather than as a third–party defendant. Pursuant to Rule 14, third-party complaints may be filed only against "a person not a party to the action who is or may be liable to [the third-party plaintiff] for all or part of the plaintiff's claim [against the third-party plaintiff]." C.R.C.P. 14(a). Adams does not assert that Kilkenny is liable to him for his liability to the Trust; consequently, C.R.C.P. 14 is not the appropriate avenue to bring Kilkenny into the case.

case. Additionally the court does not find that there are legally sufficient grounds for the assertion of a third party claim against [Kilkenny].[3]

Adams filed a C.A.R. 21 petition for an order to show cause to allow his answer amendments, including the interpleader. We issued the Rule and now make it absolute.[4]

## II.

We hold that (1) the trial court erred as a matter of law in determining that the interpleader amendment is futile, and (2) the trial court abused its discretion in denying leave to amend on grounds of delay and prejudice.

### A. Standard of Review

■ An original proceeding is not a substitute for an appeal, but we may act to exercise our discretionary jurisdiction under C.A.R. 21 when an adverse procedural ruling significantly impairs a party's ability to litigate the controversy. *Lutz v. Dist. Court*, 716 P.2d 129, 131 (Colo.1986).

#### 1. Amending Pleadings

■ The purpose of our Civil Procedure Rules is to secure a just, speedy, and inexpensive determination of every action. C.R.C.P. 1(a); *Eagle River Mobile Home Park v. Dist. Court*, 647 P.2d 660, 662 (Colo. 1982). Focus is upon resolution of actions on their merits in a reasonable, expeditious manner. 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated* 186 (3d ed.1998). Pleadings should represent the true position of the parties. *Zavorka v. Union Pac. R.R.*, 690 P.2d 1285, 1290 (Colo.App. 1984).

■ In many cases, delay standing alone may justify denial of leave to amend, if active case management has occurred to minimize delay. Delay devalues judgments, creates anxiety in litigants and uncertainty for lawyers, results in loss or deterioration of evidence, and wastes court resources. *Burchett v. South Denver Windustrial Co.*, 42 P.3d 19, 21 (Colo.2002). If a party seeks leave to amend after substantial progress toward trial has occurred, or if granting leave to amend would significantly delay the progress of the case to trial, a trial court may deny leave to amend if it should have been brought earlier.

■ Granting leave to amend is within the sound discretion of the trial court; our review is for the purpose of determining whether or not the trial court abused its discretion in ruling on the motion to amend.[5] *Polk v. Dist. Court*, 849 P.2d 23, 25 (Colo. 1993). When a trial court denies leave to amend on grounds that the amendment would be futile because it cannot survive a motion to dismiss, we review that question de novo as a matter of law. *E.g., Blakely v. United States*, 276 F.3d 853, 874 (6th Cir. 2002); *Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir.2001).

■ Reflecting a liberal policy toward timely amendments to pleadings, C.R.C.P. 15(a) encourages trial courts to look favorably upon motions to amend. *Polk*, 849 P.2d at 26; *Varner v. Dist. Court*, 618 P.2d 1388, 1390 (Colo.1980). A trial court should not impose arbitrary restrictions on making timely amendments.

---

3. The trial court's order inadvertently refers to Adams rather than Kilkenny.

4. Adams states the question as follows:
 Did the Respondents abuse their discretion by denying Petitioner/Defendant's motion for leave to amend his pleadings by adding an interpleader claim against Plaintiff and a person not yet a party, adding that person as a party on the interpleader claim, adding four affirmative defenses, and making a technical amendment to an existing third-party complaint, where leave was sought 20 days after the filing of the pleading sought to be amended, a Case Management Conference had not been held, a Case Management Order had not yet been entered, no discovery had been conducted, the case had not been set for trial, and no prejudice to any other party was demonstrated.

5. There are some circumstances where a party can amend as a matter of right. C.R.C.P. 15(a). All of the parties assumed that such circumstances were not present here, so we do not consider whether Adams could have made some or all of his amendments without seeking leave of the trial court.

 Whether leave to amend should be allowed or not depends upon the facts and circumstances. Grounds for trial court denial of a motion to amend pleadings include undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in the pleadings via prior amendments, undue prejudice to the opposing party, and futility of amendment:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave should, as the rules require, be freely given.

*Varner*, 618 P.2d at 1390 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

### 2. Interpleader

Our interpleader rule, C.R.C.P. 22, provides as follows:

> Persons having claims against the plaintiff *may be joined as defendants and required to interplead* when their claims are such that *the plaintiff is or may be exposed to double or multiple liability.* It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. *A defendant exposed to similar liability may obtain such interpleader by way of cross claim or counterclaim. The provisions of this Rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.*

C.R.C.P. 22(a) (emphasis added).

 Interpleader serves important state and private interests by efficiently resolving potential multiple actions in the same lawsuit, thereby conserving judicial and party resources. Interpleader allows a person subject to the possibility of competing claims to avoid the risk of double or multiple liability that could result from adverse determinations in different courts. Consequently, while interpleader should not automatically be granted, courts should allow it liberally. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) (applying the Federal interpleader statute); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed.2001) ("many decisions hold that the interpleader provisions, both rule and [Federal] statute, are remedial in character and should be applied liberally").

Because of the important efficiency benefits of interpleader, C.R.C.P. 22 permits a defendant to invoke interpleader after being sued by one of the competing claimants. C.R.C.P. 22(1). To make use of interpleader, a defendant must file a cross claim against a co-defendant or a counterclaim against a plaintiff in accordance with C.R.C.P. 22 and C.R.C.P. 13. The defendant may employ C.R.C.P. 13(h) to join a new party to assert a counterclaim or cross claim, if the joinder satisfies C.R.C.P. 19's compulsory joinder provisions or C.R.C.P. 20's permissive joinder provisions. See 4 James Wm. Moore et. al., *Moore's Federal Practice* ¶ 22.02[4] (3d ed.1999). "In virtually every instance of interpleader, the absentee claimants to be joined to the counterclaim or cross-claim will satisfy Rule 19 because their non-joinder threatens the stakeholder with multiple or inconsistent obligations." 4 *Moore's Federal Practice, supra* at ¶ 22.02[4].

 When a Colorado Rule is similar to a Federal Rule of Civil Procedure, we may look to federal authority for guidance in construing the Colorado rule. *Stewart v. Rice*, 47 P.3d 316, 321 (Colo.2002); *Air Communication and Satellite Inc. v. Echostar Satellite Corp.*, 38 P.3d 1246, 1251 (Colo.2002). C.R.C.P. 15(a) and Fed.R.Civ.P. 15(a), which govern amendments to pleadings, are almost identical. The doctrine of futility authorizes a trial court to deny leave to amend pleadings if doing so would be futile. 3 *Moore's Federal Practice, supra* at ¶ 15.15[3]. An

amendment is futile, if, for example, "it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Id.* When deciding whether a motion to amend pleadings is futile, the trial court must accept the moving party's allegations as true. *See Pediatric Neurosurgery, P.C. v. Russell,* 44 P.3d 1063, 1067 (Colo.2002).

## B. Adams' Answer Amendments

In this case, we hold that the trial court erred in determining that Adams' claim of double liability to Kilkenny, individually, and Benton as trustee of a trust for Kilkenny as sole beneficiary, would be futile. The trial court abused its discretion in determining that undue delay and prejudice would result from granting leave for Adams' answer amendments.

In his proposed amended answer, Adams based his counterclaim against Benton and his cross-claim against Kilkenny by way of interpleader on allegations of exposure to double liability. The gist of the double exposure allegation is that Kilkenny, the sole beneficiary of the trust, surrendered her obligations under that trust in exchange for the Adams and Benton settlement agreements, and that Adams' sole obligation to Kilkenny exists under the Adams Settlement Agreement. By seeking Adams' payment to the trust, so Adams alleged, Benton exposed Adams to double liability on the same obligation, because the settlement obligated Adams to pay Kilkenny directly in satisfaction of Adams' liability to the trust.[6]

### 1. Amendment Not Futile

The trial court ruled that Adams lacked "legally sufficient" grounds to proceed against Kilkenny. The court thus invoked the futility doctrine. Amendments are futile if they are legally insufficient, for example, when a proposed amendment fails to cure defects in previous pleadings, fails to state a legal theory, or would not withstand a motion to dismiss. 3 *Moore's Federal Practice, supra* at ¶ 15.15[3].

■ Adams' interpleader is not futile if it can survive a motion to dismiss the claims underlying the interpleader. Pursuant to C.R.C.P. 22, a person seeking interpleader must sufficiently plead exposure to double liability based on the same obligation, res, fund, or other stake. C.R.C.P. 22(1). The person asserting interpleader must allege facts sufficient to support a reasonable belief that exposure to double or multiple liability may exist. Certainty of exposure to double or multiple liability is not the test; rather,

6. Because the trial court must accept Adams' allegations as true for purposes of ruling on his motion to amend, we reproduce for reference Adams' interpleader allegations from his proposed amended answer:

> By virtue of her settlements with Adams and Benton, Individually, Kilkenny surrendered her rights under the Trust in exchange for her rights under the Adams Settlement Agreement and the Benton Settlement Agreement.
>
> Adams' sole obligations to Kilkenny are those created by the Adams Settlement Agreement. Adams has made substantial payments to Kilkenny under the Adams Settlement Agreement, which Kilkenny has accepted, thereby waiving any right she may have had to require payments from Adams in her capacity as a beneficiary of the Trust.
>
> By asserting the claims contained in the Amended Verified Complaint, Benton, Trustee, seeks to recover from Adams on obligations owing to Kilkenny by the Trust.
>
> If Benton, Trustee, is allowed to recover from Adams on the claims contained in the Amended Verified Complaint, and Kilkenny is allowed to recover from Adams on the obligations contained in the Adams Settlement Agreement, Adams will be subjected to double liability for the same obligations.
>
> The Adams Settlement Agreement calls for Adams to make monthly payments to Kilkenny of $7,500, the next of which is due March 1, 2002 and the last of which is due August 1, 2002, and for Adams to make one final payment to Kilkenny of $250,000 on or before September 1, 2002 ("Remaining Payments").
>
> If Adams makes the Remaining Payments to Kilkenny, and Benton, Trustee, is allowed to prosecute the claims contained in the Amended Verified Complaint, Adams will be exposed to double liability with respect to those payments.
>
> Adams is ready, willing and able to pay the amount of the Remaining Payments into the Registry of this Court pending determination by this Court of whether such payments are owing to Kilkenny under the Adams Settlement Agreement or to Benton, Trustee, Pursuant to the claims contained in the Amended Verified Complaint.

the allegations must meet a "minimal threshold of substantiality." *Equitable Life Assurance Soc. v. Porter–Englehart*, 867 F.2d 79, 84 (1st Cir.1989); *Indianapolis Colts v. Baltimore*, 741 F.2d 954, 958 (7th Cir.1984) (rejecting interpleader because stakeholder's characterization of alleged claim against it did not meet "minimal threshold of substantiality"); *Noey v. Bledsoe*, 978 P.2d 1264, 1271 (Alaska 1999).

Here, the trial court erred in determining that Adams' claim against Kilkenny would be futile. Adams pled that Benton, as trustee, was seeking by his complaint to recover payments to the Trust that Adams was making directly to Kilkenny under the Settlement Agreement that, allegedly, resolved his obligation to the Trust. If Benton were to obtain a judgment against Adams in the present action, without resolution of Adams' obligation to Kilkenny, Adams could suffer double liability for the same obligation. Interpleader is designed to get claims of the affected parties to trial or settlement in one lawsuit, rather than through a number of suits that might result in inconsistent judgments. Interpleader is appropriate here.

### 2. No Undue Delay

The trial court cited delay as a basis for denying Adams leave to amend. However, the delay occurred in Benton's amendment of the complaint five months after the trial court granted him leave to amend. Benton did not receive notice of the trial court's ruling granting him leave to amend his complaint. Neither Benton's counsel—prior to his withdrawal—nor Benton as pro se afterwards, sought to ascertain the status of the trial court's ruling before the trial court issued its show cause order for lack of prosecution.

This unfortunate delay was not attributable to Adams. Adams filed his answer in a timely manner and filed his answer amendments, including the interpleader claim, twenty days after he answered Benton's amended complaint, also timely. The case had been in suspense awaiting Benton's complaint amendment. No case management order had entered, the parties had not commenced discovery, mandatory disclosures under C.R.C.P. 26 were not yet due, and no trial date had been set.

Given the embryonic stage of the case, Adams' answer amendments would not have caused undue delay. Adams proceeded diligently in filing his motion to dismiss based on Benton's standing to sue in his individual capacity. Without delay after Benton filed his amended complaint, Adams filed his answer and amended answer, counterclaim, and sought to employ interpleader. Most importantly, Adams' amendments—most notably by interpleading Kilkenny and Benton—were calculated to resolve the merits of the dispute in one lawsuit, the one already under way.

If Adams had sought the amendments outside of case management order timelines, undue delay justifying denial of leave to amend might have resulted. Our Colorado Rules of Civil Procedure contemplate steady progress to trial under court-imposed or rule-imposed deadlines.[7] Parties should join issues and other parties needed for just and efficient resolution of the case as early as practicable in the litigation, so that a case may proceed expeditiously to trial or settlement. Prompt, active trial court and party management of the litigation following its initial filing is essential to just, speedy, and inexpensive determination of the dispute.

### 3. No Prejudice

Likewise, Benton did not make a sufficient showing of prejudice justifying denial of Adams' answer amendments. Benton did not argue prejudice in his trial court brief. To us, he argues that he might not be

---

7. We recently amended C.R.C.P. 16 to further assure that cases progress quickly to trial or settlement. The new Rule 16(b) establishes a presumptive case management order that will take effect unless the parties act to amend it. Under the old Rule, if a party in the case was proceeding *pro se*, the Rule obligated the trial court to have a case management conference before entering a case management order. Under revised C.R.C.P. 16, a case management order enters automatically, without court action, even when one or more parties are *pro se*. Richard P. Holme, *Civil Rules 16 and 26: Pretrial Procedure and Discovery Revisited and Revised*, Colo. Law., December 2001, at 9, 14–18.

able to collect a judgment in his favor if the suit is further delayed. He says that Adams may be transferring or otherwise concealing assets to shield them from creditors. He says that time is running out under domestic and foreign statutes of limitations for recovery of these assets.

The five-month delay in filing his amended complaint stands against Benton's current claim of need for rapidity. Adams had no role in this delay other than timely filing his motion to dismiss. Whether Benton will prevail and obtain a judgment in this case awaits resolution on the merits. His concerns about collecting a judgment in his favor are premature.[8]

Minimal delay would have resulted from granting Adams' motion to amend to add affirmative defenses, interplead Benton and Kilkenny's claims, and make a technical amendment to a counterclaim against Benton. In light of Adams' allegations of sufficient grounds for reasonable belief of exposure to double liability to Kilkenny and to the Trust for the same obligation, and absence of cognizable prejudice to Benton,[9] the trial court abused its discretion in denying Adams leave to file his answer amendments.

Adams' allegations met the "minimal threshold of substantiality" standard justifying the addition of Kilkenny's claim to the suit to resolve the issue of potential double liability on the same obligation, and no undue delay in the litigation or prejudice to a party would have resulted from granting the amendments.

8. In the event of a fraudulent transfer, the Colorado Uniform Fraudulent Transfer Act, §§ 38-8-101 through 38-8-112, 10 C.R.S. (2002), affords a means of pre-judgment creditor protection in particular circumstances. See § 38-8-102(b)(3), 10 C.R.S. (2002) (defining "claim" to include rights to payment, including those rights not reduced to judgment); § 38-8-102(b)(5), 10 C.R.S. (2002) ("creditor" is a person who has a claim); § 38-8-105(1)(a), 10 C.R.S. (2002) (transfers are fraudulent if made with actual intent to hinder, defraud, or delay any creditor); § 38-8-108, 10 C.R.S. (2002) (identifying creditor's remedies); see also C.R.C.P. 102(a) (procedures for prejudgment attachment).

9. The trial court did not premise its order on potential prejudice to Kilkenny, so we do not

### III.

Accordingly, we make the rule absolute, and direct the trial court to allow Adams leave to file his answer amendments consistent with this opinion.

consider the possibility of such prejudice here. However, we observe that prejudice to interpleaded parties may be a proper consideration when deciding whether to grant leave. A party might be prejudiced if joined in a case late in the proceedings, after important rulings have been issued or substantial discovery taken. However, such prejudice is unlikely in a case like the instant one, were Kilkenny was interpled only twenty days after Adams filed his first answer, and where Kilkenny was apparently aware of the ongoing litigation, as evidenced by her action in filing an opposition to Adams' Motion for Leave to Amend and her counsel's entry of appearance shortly after Benton filed his original complaint.