The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 30, 2025

## 2025COA85

**No. 24CA1393 *Smith v. Terumo BCT, Inc.* — Class Actions; Courts and Court Procedure — Jurisdiction of Courts — Standing — Injury in Fact**

A division of the court of appeals holds that a plaintiff cannot establish standing to sue based solely on an allegation that the defendant's negligent conduct may increase his future risk of illness or injury.  The concurrence dubitante raises questions about the correct interpretation of C.R.C.P. 60(b)(5) in the wake of seemingly conflicting decisions in *Schaden v. DIA Brewing Co.*, 2021 CO 4M, and *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025).

COLORADO COURT OF APPEALS **2025COA85**

Court of Appeals No. 24CA1393
Jefferson County District Court No. 19CV31822
Honorable Lindsay VanGilder, Judge

Edward Smith, Jr.,

Plaintiff-Appellant,

and

Paula Jensen and Gay Lang,

Intervenors-Appellants

v.

Terumo BCT, Inc., and Terumo BCT Sterilization Services, Inc.,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Welling and Johnson, JJ., concur
Grove, J., concurs dubitante

Announced October 30, 2025

Singleton Schreiber LLP, Kevin S. Hannon, Yohania T. Santana, Denver, Colorado, for Plaintiff-Appellant and Intervenors-Appellants

McFarland Litigation Partners, LLC, J. Lucas McFarland, Golden, Colorado; King & Spalding LLP, Paul Alessio Mezzina, Nicolas A. Mecsas-Faxon, Washington, D.C.; King & Spalding LLP, Douglas A. Henderson, Nicholas H. Howell, Atlanta, Georgia, for Defendants-Appellees

Wheeler Trigg O'Donnell, LLP, Frederick R. Yarger, Kate K. Fletcher, Denver, Colorado, for Amici Curiae American Property Casualty Insurance Association, Advanced Medical Technology Association, National Federation of Independent Business Small Business Legal Center, Inc., American Tort Reform Association, Chamber of Commerce of the United States of America, Colorado Chamber of Commerce, Coalition for Litigation Justice, Inc., and American Coatings Association

¶ 1    In Colorado, a plaintiff must satisfy two criteria to establish standing to sue: (1) an injury in fact to (2) a legally protected interest. *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004). In this case, we consider whether Edward Smith, Jr., the named plaintiff in this putative class action lawsuit, adequately pleaded that he suffered an injury in fact by alleging that he and other class members have been exposed to and absorbed toxic chemicals from nearby industrial facilities. The district court concluded that Smith's complaint must be dismissed because it did not allege that Smith and his fellow class members have fallen ill or suffered any other tangible adverse effects as a result of their alleged chemical exposure. It thus denied Smith's motion to amend his complaint under C.R.C.P. 15(a), his motion for relief and subsequent leave to amend under C.R.C.P. 60(b)(5), and a motion by Paula Jensen and Gay Lang to intervene as plaintiffs under C.R.C.P. 24(a) or (b).

¶ 2    Like the district court, we conclude that a plaintiff cannot establish standing to sue under Colorado law based solely on an allegation that the defendant's actions have increased the plaintiff's risk of future illness or disease. Therefore, we affirm.

## I.    Background

¶ 3    We draw the following factual background from Smith's complaint and the proposed amended complaint.

¶ 4    Defendants, Terumo BCT, Inc., and Terumo BCT Sterilization Services, Inc. (collectively, Terumo), are the owners and operators of manufacturing and sterilization facilities in Lakewood.  Terumo sterilizes medical equipment using ethylene oxide (EtO), which is a colorless and odorless gas and a known carcinogen.  The Lakewood facilities emit EtO in accordance with an air quality permit issued by the Colorado Department of Public Health and Environment.

¶ 5    In December 2019, Smith filed a class action lawsuit on behalf of himself and other similarly situated residents living near the Lakewood facilities.  In his complaint, Smith asserted claims for negligence, strict liability for ultrahazardous activity, private nuisance, and public nuisance.  He alleged that he and other class members have been injured because they have been exposed to large amounts of EtO emissions from the Lakewood facilities since 1988.

¶ 6    Smith did not allege that he or any other member of the proposed class has suffered any adverse physical effects from EtO

exposure; to the contrary, he excluded from the proposed class "all persons who have been diagnosed with cancer related to exposure to EtO." As for the injuries suffered by members of the proposed class, Smith alleged that the "significant exposure" he and other nearby residents have experienced has increased their "risk of illness, disease process and/or disease, including cancer." An appropriate remedy for this "increased risk," Smith contended, would be to award him and other class members "the cost of a program of diagnostic testing for the early detection of illnesses, disease processes or disease" to ensure that any illnesses caused by EtO exposure could be "immediately identified and aggressively treated."

¶ 7 Terumo moved to dismiss Smith's complaint. The district court granted the motion, reasoning that Smith had not alleged that he or any other class member has been injured by EtO exposure. As the court put it, "[e]ven taking [Smith's] allegations of exposure and heightened risk of developing disease as true, the Court finds exposure to a toxic substance does not, by itself, establish injury for an action in tort."

3

¶ 8      The court dismissed the complaint on February 16, 2021. Although the order did not indicate whether the dismissal was with or without prejudice, the register of actions includes two additional entries on the same date, one stating that the case was dismissed without prejudice and the other stating that the case was administratively closed.

¶ 9      Smith did not appeal the district court's February 16, 2021, order. Instead, on April 5, 2021, he filed a motion to amend the complaint under C.R.C.P. 15(a) or, alternatively, for relief from judgment under C.R.C.P. 60(b)(5).[1] The proposed amended complaint sought to add two plaintiffs — Jensen and Lang — who at the same time moved to intervene in the case. It also alleged additional facts about EtO's hazardous, mutagenic, cancer-causing, and genotoxic nature; diagnostic testing and monitoring available to facilitate early detection of diseases associated with EtO exposure;

_____

[1] At the end of his response to Terumo's motion to dismiss, Smith requested "leave to amend his complaint if the Court cannot deny Defendants' [C.R.C.P.] 12(b)(5) motion." The court did not address Smith's request at the time because, as the court noted in a subsequent order, it was not submitted as a separate motion. *See* C.R.C.P. 121, § 1-15(1)(d) ("A motion shall not be included in a response or reply to the original motion.").

4

Terumo's EtO emissions; and the presence of EtO in Smith's, Lang's, and Jensen's bodies, including allegations that EtO has been absorbed through their respiratory tracts and distributed in their bodies, "constituting a change in the structure of [their] bod[ies]." The proposed amended complaint also attempted to add battery as a new cause of action.

¶ 10    Three years elapsed with no action from the district court. Eventually, Terumo filed a "Motion to Confirm the Case is Closed," which appears to have prompted the court to deny Smith's requests for relief under C.R.C.P. 15(a) and 60(b)(5), as well as Jensen and Lang's motion to intervene as plaintiffs. Regarding Smith's motion to amend the complaint under C.R.C.P. 15(a), the court ruled that he was not entitled to amend his complaint as a matter of course because the February 16, 2021, order granting the motion to dismiss was a final judgment. *See Schaden v. DIA Brewing Co.,* 2021 CO 4M, ¶ 2. The court denied Smith's request for relief under C.R.C.P. 60(b)(5) after concluding that the allegations in the proposed amended complaint did not "address or cure the legal deficiencies that provide the basis for the [initial] dismissal of the complaint." Accordingly, the court denied the "request for leave to

amend under C.R.C.P. 60(b)(5) as futile." In a separate order issued the same day, the court denied the motion to intervene filed by Jensen and Lang "for the reasons outlined" in the order denying Smith's motion.

¶ 11     Smith now appeals. He contends first that the district court should have permitted him to amend his complaint as a matter of course because the February 16, 2021, order was not a final judgment. In the alternative, he argues that the court should have granted his motion for relief under C.R.C.P. 60(b)(5) (and should have permitted Jensen and Lang to intervene as plaintiffs) because his proposed amended complaint stated a claim upon which relief could be granted and included sufficient allegations to establish that he and the intervenors had standing to pursue their claims.

## II.     C.R.C.P. 15(a)

¶ 12     Smith contends that the district court's February 16, 2021, order granting the motion to dismiss was not a final judgment. Accordingly, he asserts, he was entitled to amend his complaint as a matter of right under C.R.C.P. 15(a) because Terumo had not yet filed a responsive pleading when the court granted the motion. We disagree.

6

### A. Standard of Review

¶ 13    Appellate courts generally review a district court's denial of a motion seeking leave to amend a complaint for an abuse of discretion. *Benton v. Adams,* 56 P.3d 81, 85 (Colo. 2002). However, when a court denies leave to amend on grounds that the amendment would be futile because it cannot survive a motion to dismiss, we review that question de novo as a matter of law. *Id.*

### B. Applicable Law

¶ 14    C.R.C.P. 15(a) provides that a party "may amend his pleading once as a matter of course at any time before a responsive pleading is filed" or if a responsive pleading is not permitted, "within 21 days" after the initial pleading was filed. Outside of this right to amend, a party may also amend a complaint with the written consent of the adverse party or by leave of the court "when justice so requires." C.R.C.P. 15(a).

¶ 15    "[A] final judgment," however, "cuts off a plaintiff's right to file an amended complaint as a matter of course under C.R.C.P. 15(a)." *Schaden,* ¶ 2. Thus, to amend a complaint after entry of a final judgment, a plaintiff must seek relief under C.R.C.P. 59 or 60 and

must obtain either written consent to amend from the defendant or leave to amend from the court. *Schaden,* ¶ 39.

¶ 16    "A final judgment is 'one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding.'" *In re Water Rts. of Elk Dance Colo., LLC,* 139 P.3d 660, 668 (Colo. 2006) (citation omitted). When evaluating finality, courts look to the substance of the order at issue, rather than its title or characterization, to determine whether it cuts off the plaintiff's right to amend the complaint as a matter of course. *Schaden,* ¶¶ 47-49.

### C.    Additional Facts

¶ 17    The district court granted Terumo's motion to dismiss because Smith did not plead a cognizable injury. The court reasoned that mere exposure to "a toxic chemical," without an accompanying adverse physical impact, "is inadequate to support a cause of action for toxic-tort related injury." Likewise, to the extent that EtO exposure increases Smith's "potential risk for future illness or disease," the court determined that the increased risk was "not a present injury in itself." As a result, the court concluded, Smith's

8

claim seeking medical monitoring for class members as a remedy for EtO exposure must fail.  In reaching this conclusion, the court observed that it had not found a single case decided by a Colorado state court that "adopted or advanced [medical monitoring as a] separate cause of action under Colorado state law."[2]  Because the court found it inappropriate "to engage in legislative or policy-making functions," it dismissed the case.  Given the basis of its ruling — that Smith had not pleaded that he suffered a legally cognizable injury — the court did not consider whether Smith had sufficiently pleaded other elements of the claims asserted in his complaint.

¶ 18      The court denied Smith's subsequently filed motion to amend the complaint for largely similar reasons.  After ruling that amendment as a matter of course was no longer available after it had dismissed the case, *see Schaden*, ¶ 2, the court concluded that

---

[2] The court acknowledged two federal district court cases that had predicted Colorado state courts might "recognize a claim for medical monitoring absent present physical injury," *see Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1224 (D. Colo. 2018); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1477 (D. Colo. 1991), but found it significant that no state court has subsequently done so given the substantial amount of time that has elapsed since those predictions were made.

Smith's proposed amended complaint was futile because it still failed to allege a cognizable injury.

### D. Analysis

¶ 19 Smith contends that the district court's February 16, 2021, order was not a final judgment because it left issues to be decided. In particular, he asserts that the dismissal order did not determine standing, whether he had sufficiently pleaded all of his claims, or the scope of the district court's jurisdiction. He also asserts the court's order lacks indicia of finality because the court did not enter the judgment in the record of actions, it dismissed Smith's claim without prejudice, and it did not dismiss the entire action.

¶ 20 Regardless of how the district court framed its analysis,[3] it concluded that Smith did not allege that he or other members of the class have suffered a cognizable injury as a result of EtO exposure.

---

[3] We acknowledge that the district court's February 16, 2021, order could be read in two ways — as dismissing the case either on jurisdictional grounds for lack of standing or because Smith's complaint failed to state a claim upon which relief may be granted. Reviewing the question of subject matter jurisdiction de novo, we conclude that Smith's failure to plead that he suffered an injury in fact to a legally protected interest deprived the district court of jurisdiction over his complaint. *See Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977).

10

Thus, in the absence of an allegation that the class members have been "injured in fact," the district court was required to dismiss the case on jurisdictional grounds for lack of standing. *See Hotaling v. Hickenlooper*, 275 P.3d 723, 725 (Colo. App. 2011) ("To establish standing, a plaintiff suing in Colorado state court must establish that (1) he incurred an injury-in-fact; and (2) the injury was to a legally protected interest."); *Colo. Manufactured Hous. Ass'n v. Pueblo County*, 857 P.2d 507, 510 (Colo. App. 1993) ("If the complaint fails to allege injury, the case must be dismissed; if the plaintiff does allege sufficient injury, the question whether the plaintiff is protected by law from the alleged injury must be answered.").

¶ 21    Looking to "the substance of the judgment at issue," *Schaden*, ¶ 47, we conclude that the February 16, 2021, order was a final judgment. The district court concluded that Smith and other members of the class have not suffered an injury as the result of Terumo's alleged EtO emissions. And, having concluded that Smith did not allege that he or the other putative class members have been injured by Terumo, it follows that Smith lacked standing and "the district court was compelled to dismiss the case as it lacked

11

jurisdiction to hear it." *Id.* at ¶ 48. Once the court decided it did not have jurisdiction, there was nothing more for it to decide "and nothing further for the court to pronounce," *id.*, meaning that it had issued a final judgment and Smith could no longer rely on C.R.C.P. 15(a) to amend his complaint as a matter of course. *See Moya v. Schollenbarger*, 465 F.3d 444, 449 (10th Cir. 2006) ("In evaluating finality, . . . we look to the *substance* and *objective intent,* of the district court's order, not just its terminology.").

### III.    C.R.C.P. 60(b)(5)

¶ 22    Smith argues in the alternative that, if the district court's dismissal order was a final judgment, the court erred when it concluded that his proposed amendment to the complaint was futile and thus denied him relief from judgment under C.R.C.P. 60(b)(5), which allows the court to relieve a party from a judgment for "any other reason justifying relief from the operation of the judgment."[4] He asserts that a present physical injury is not a prerequisite for recovery under Colorado tort law and that, as a result, his proposed

---

[4] To the extent that we address Smith's arguments, we are limited to reviewing the court's decision denying Smith's request for relief under C.R.C.P. 60 because he failed to appeal the court's dismissal order.

amendments cured the alleged deficiencies in his original

complaint.[5]  We are not persuaded.

### A.      Applicable Law and Standard of Review

¶ 23     As we have already discussed, *Schaden* holds that "once a

judgment enters and becomes final, a plaintiff no longer has the

right to file an amended complaint as a matter of course under

C.R.C.P. 15(a)." *Schaden*, ¶ 39.  But losing the right to amend the

complaint as a matter of course does not necessarily deprive a

plaintiff of any postjudgment remedy.  To the contrary, the court in

*Schaden* concluded that "such a plaintiff must seek relief from the

judgment under C.R.C.P. 59 or 60 *and* must obtain either leave to

amend from the court or written consent to amend from the

defendant." *Id.* (emphasis added).

¶ 24     Grounds for a district court to deny leave to amend pleadings

include undue delay, bad faith, dilatory motive, repeated failure to

---

[5] Smith's appellate briefing does not develop any argument
contesting the district court's apparent rejection of his proposed
amended claims based on ultrahazardous activity and public and
private nuisance.  We therefore do not consider them.  *See State
Farm Mut. Auto. Ins. Co. v. City of Lakewood*, 788 P.2d 808, 811 n.5
(Colo. 1990) (deeming abandoned a claim not raised on appeal, even
where the district court failed to rule on the claim below).

cure deficiencies in the pleadings via prior amendments, undue prejudice to the opposing party, and futility. *Benton*, 56 P.3d at 86. A proposed amendment is futile "if, among other things, it fail[s] to state a legal theory or [is] incapable of withstanding a motion to dismiss." *Vinton v. Virzi*, 2012 CO 10, ¶ 13.

¶ 25 Whether to grant a party leave to amend "is within the sound discretion of the trial court." *Benton*, 56 P.3d at 85. We review the decision to deny a party's motion to amend pleadings for an abuse of discretion. *Riccatone v. Colo. Choice Health Plans*, 2013 COA 133, ¶ 47. "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair" or "when it misconstrues or misapplies the law." *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 29.

¶ 26 C.R.C.P. 60(b)(5) is a residuary provision that has been construed to apply only to situations not covered by the other provisions of C.R.C.P. 60(b) and should be employed "only in extreme situations or extraordinary circumstances." *Davidson v. McClellan*, 16 P.3d 233, 237 (Colo. 2001). As relevant here, a court may relieve a party from a final judgment under C.R.C.P. 60(b)(5) for "any other reason justifying relief from the operation of the

14

judgment." As the concurrence discusses, *Schaden* did not make clear whether the plaintiff in that case made a showing of extraordinary circumstances, and the United States Supreme Court's recent decision in *BLOM Bank SAL v. Honickman,* 605 U.S. 204, 214 (2025), raises questions about the extent to which such a showing is required. We need not reach that question, however, because, like the district court, we conclude that Smith's proposed amended complaint was futile.

### B.    Additional Facts

¶ 27    We have already noted that the district court dismissed Smith's original complaint after concluding that he had not pleaded a cognizable injury. In his proposed amended complaint, Smith attempted to address these shortcomings by, in part, fleshing out his assertion that he and other class members have suffered a cognizable injury as a result of their EtO exposure.

¶ 28    The court declined to grant Smith relief because his proposed amendments were futile. The court explained that, while the amendments included new allegations "to support [Smith's] claim of exposure to EtO and presence of EtO in his body," the proposed amended complaint still failed to allege that Smith or any other

15

class member has been "diagnosed with cancer or any other illness or disease." While the court acknowledged that Smith's proposed amendments added more information about the "hazardous nature of EtO and its mutagenic, cancerous, and genotoxic properties," the proposed amended complaint still failed to do any more than generally assert that Smith's body (and the bodies of other class members) has absorbed the chemical, leading to an increased risk of illness and disease and alterations in his body and "bodily structures." What the proposed amended complaint did *not* do, the court observed, was "allege any manifestation of illness or disease."

¶ 29    In the absence of allegations that Smith and other class members have suffered any injury as a result of EtO exposure, the district court adhered to the analysis in its original dismissal order. To reach this conclusion, the court compared Smith's complaint to "cases that analyze exposure to asbestos, finding no injury where there was no manifestation of illness or disease." Accordingly, because granting the proposed amendments would not cure the alleged deficiencies that provided the basis for the court's earlier dismissal, the court denied Smith's request to amend the complaint as futile.

C. Analysis

¶ 30  Smith contends that his proposed amended complaint was not futile for two reasons. First, he maintains that he did allege an injury by asserting that EtO exposure has altered his bodily structures and left him with an increased risk of disease. Second, he argues that he has been injured due to the "[t]he pecuniary detriment of the present medical necessity to incur the cost of diagnostic testing for the early detection of disease." As Colorado law currently stands, we cannot conclude that either of these assertions established that Smith has suffered an injury in fact sufficient to confer standing to sue.

¶ 31  "One of the basic principles of law is that a party may not recover damages if he has not suffered an injury." *Isaac v. Am. Heritage Bank & Tr. Co.*, 675 P.2d 742, 744 (Colo. 1984). Consistent with this principle, "a person cannot pursue a tort claim for future death, *future physical injury,* or future property damage." *Open Door Ministries v. Lipschuetz*, 2016 CO 37M, ¶ 19 (emphasis added). Because Smith's allegation that EtO exposure increases his risk of cancer or other disease amounts to nothing more than a hypothetical claim of "future physical injury," the district court

17

correctly concluded that he had not alleged an injury "where there was no manifestation of illness or disease."

¶ 32 Although Smith does not identify any Colorado case holding that mere exposure to a toxic chemical without an accompanying physical injury can confer standing to sue, we acknowledge that there is a split of authority on this issue in other states. Some have held that such an allegation can support a claim for medical monitoring. *See, e.g.*, *Meyer v. Fluor Corp.*, 220 S.W.3d 712, 718 (Mo. 2007) ("A physical injury requirement is inconsistent with the reality of latent injury and with the fact that the purpose of medical monitoring is to facilitate the early diagnosis and treatment of latent injuries caused by exposure to toxins."); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430 (W. Va. 1999) (rejecting "the contention that a claim for future medical expenses" based on an allegation of exposure to toxic substances "must rest upon the existence of present physical harm"); *Bourgeois v. A.P. Green Indus., Inc.*, 97-C-3188, pp. 5-6 (La. 7/8/98), 716 So. 2d 355, 356-57, 359 (holding that even though asymptomatic plaintiffs did not suffer "bodily harm" from exposure to asbestos, their medical-monitoring claim rested on the "legally protected interest" of avoiding "costly

medical bills"), *superseded by statute*, 1999 La. Acts 2662.  Others

have declined to permit medical-monitoring relief under similar

circumstances and have "generally presumed that the subclinical

effects of toxic exposure do not constitute *physical* injury."  *June v.*

*Union Carbide Corp.*, 577 F.3d 1234, 1249 & n.11 (10th Cir. 2009)

(collecting cases).

¶ 33    In recent years, however, a trend has emerged as courts

throughout the country have repeatedly held that a toxic tort claim

cannot proceed in the absence of a present physical injury.  *See,*

*e.g.*, *Baker v. Croda Inc.*, 304 A.3d 191, 194 (Del. 2023) ("[A]n

increased risk of harm only constitutes a cognizable injury once it

manifests in a physical disease."); *Brown v. Saint-Gobain*

*Performance Plastics Corp.*, 300 A.3d 949, 952 (N.H. 2023) ("[T]he

mere existence of an increased risk of future development of disease

is not sufficient under New Hampshire law to constitute a legal

injury . . . ."); *Berry v. City of Chicago*, 2020 IL 124999, ¶ 33, 181

N.E.3d 679, 688 ("The rule . . . that an increased risk of harm is

not, itself, an injury, is consistent with the traditional

understanding of tort law."); *Lowe v. Philip Morris USA, Inc.*, 183

P.3d 181, 187 (Or. 2008) ("Following our precedents, we hold that

negligent conduct that results only in a significantly increased risk of future injury that requires medical monitoring does not give rise to a claim for negligence."). Because these cases are consistent with Colorado's longstanding rejection of tort claims based on the potential of future physical harm, *see, e.g.*, *Lipschuetz*, ¶ 19, the district court did not err by following them.

¶ 34    Similar reasoning applies to Smith's new claim that EtO has been "absorbed" by his respiratory tract and "distributed in his body," thus "constituting a change in the structure of his body." This allegation hews closely to section 15 of the Restatement (Second) of Torts (A.L.I. 1965), which defines bodily harm as "any physical impairment of the condition of another's body, or physical pain or illness." And section 15 provides further in an accompanying comment that "an impairment of the physical condition of another's body" occurs "if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm." *Id.* at cmt. a.

¶ 35    No Colorado case has adopted this definition, but we need not decide whether it controls because Smith's allegations are conclusory in any event. *See Scott v. Scott*, 2018 COA 25, ¶ 19

(noting that the "plausibility standard" for a complaint "emphasizes that facts pleaded as legal conclusions (i.e., conclusory statements) are not entitled to the assumption that they are true"). True, the proposed amended complaint cited various scientific studies describing the health risks associated with EtO exposure and alleged that it is readily absorbed by the lungs, rapidly metabolized, and distributed throughout the body. But absorption and metabolization do not necessarily lead to changes in the body's "structure or function," Restatement (Second) of Torts § 15 cmt. a; thus, without allegations specific to Smith or the other proposed plaintiffs, these claims must be rejected as conclusory. *Cf. Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 95 (4th Cir. 2011) (applying West Virginia law to conclude that the "alteration in the structure" of or accumulation of a toxic chemical in the plaintiffs' blood was insufficient to support a claim of battery). Because the proposed amended complaint did not include an allegation that Smith — or any other member of the class — has suffered any *currently existing* adverse effect as a result of his alleged exposure to EtO, the district court correctly concluded that his proposed amended complaint was futile.

¶ 36    Turning to Smith's assertion that his need to undergo medical monitoring amounts to an economic injury, the district court correctly observed that this claim "blurred the line between establishing injury and damages."  As the Michigan Supreme Court put it in a similar case, "a plaintiff must demonstrate a present physical injury to person or property *in addition to* economic losses that result from that injury in order to recover under a negligence theory."  *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 690 (Mich. 2005).  Put another way, Smith cannot recover economic damages associated with a medical monitoring claim without first establishing that he has suffered an injury in fact.  Because his proposed amended complaint did not include allegations that would support such an inference, the district court did not err by denying Smith's motion as futile.

## IV.    Remaining Issues

¶ 37    We briefly address Smith's remaining contentions.

- To the extent that Smith attacks the merits of the court's original order of dismissal, we do not reach those arguments because Smith did not appeal that order.  *See Gestner v. Gestner*, 2024 COA 55, ¶ 21 (explaining that

an appeal of the denial of a Rule 60(b) motion "does not bring up the underlying judgment for review" (quoting *People in Interest of J.A.U. v. R.L.C.*, 47 P.3d 327, 331 n.6 (Colo. 2002))).

- Although the district court did not explicitly address the question, we conclude that the claim of battery — which Smith included in the proposed amended complaint as an additional ground for the recovery of medical monitoring costs — was futile.  Battery is an intentional tort, and "regardless of the characteristics of the alleged tortfeasor, a plaintiff must prove that the actor desired to cause offensive or harmful consequences by his act." *White v. Muniz*, 999 P.2d 814, 819 (Colo. 2000).  While Smith's proposed amended complaint alleged that Terumo intentionally emitted EtO into the atmosphere, it did not allege that Terumo "desired" to offend or harm anyone by doing so.

- Finally, the court did not err by denying Jensen and Lang's motion to intervene on grounds that intervention was futile.  The proposed new class members asserted

"the same claims for injury as Plaintiff Smith: past present and future significant exposure" to EtO that resulted in "increased risk of illness, disease, or disease process" and the need for medical monitoring to detect the resulting illness or disease. Because Smith's proposed amended complaint was futile, it follows that the proposed intervenors' claims were futile as well.

## V. Disposition

¶ 38 We affirm the judgment.

JUDGE WELLING and JUDGE JOHNSON concur.

JUDGE GROVE concurs dubitante.

JUDGE GROVE, concurring dubitante.

¶ 39 I write separately to highlight an emerging divide between the Colorado Supreme Court's interpretation of C.R.C.P. 60(b)(5) and the United States Supreme Court's interpretation of the federal rule that it tracks, Fed. R. Civ. P. 60(b)(6), and to urge the Colorado Supreme Court to clarify its interpretation of the Colorado rule.

¶ 40 C.R.C.P. 60(b)(5) is a residuary provision that should be construed narrowly "to avoid undercutting the finality of judgments." *In re People in Interest of A.P.*, 2022 CO 24, ¶ 22; *see Cavanaugh v. State, Dep't of Soc. Servs.*, 644 P.2d 1, 5 (Colo. 1982). The rule mirrors Fed. R. Civ. P. 60(b)(6) and, like its federal counterpart, has historically been construed to apply "only to situations not covered by [C.R.C.P. 60(b)'s other] enumerated provisions" and "only in extreme situations or extraordinary circumstances." *Davidson v. McClellan*, 16 P.3d 233, 237 (Colo. 2001).

¶ 41 Notwithstanding its historically narrow interpretation of C.R.C.P. 60(b)(5), in *Schaden v. DIA Brewing Co.*, 2021 CO 4M, the Colorado Supreme Court seemed to suggest that the rule can be used as a vehicle for the post-dismissal amendment of a complaint

without regard to whether an "extreme situation" or "extraordinary circumstance" exists. As I understand *Schaden*'s holding, a district court should allow a postjudgment amendment to the complaint under C.R.C.P. 60(b)(5) as long as the proposed amendment remedies the shortcomings that led to the complaint's dismissal. Specifically, the *Schaden* court held that because the plaintiff's "proffered amended complaint is not futile and properly alleges both standing and the claims set forth" therein, the proper remedy was a remand with instructions to the district court to "accept [the] amended complaint for filing." *Id.* at ¶ 61.

¶ 42 Notably, the *Schaden* court reached this conclusion without any reference to the "extraordinary circumstances" requirement that it has traditionally imposed on all types of requests for postjudgment relief under C.R.C.P. 60(b)(5).[1] This approach was consistent with some federal courts' historical interpretation of the

---

[1] The plaintiff in *Schaden v. DIA Brewing Co.*, 2021 CO 4M, sought post-trial relief more than fourteen days after the court had dismissed its claims and closed the case. *See* C.R.C.P. 59(a) (providing that a motion for post-trial relief must be brought within fourteen days of entry of judgment). So the case appears to have been decided under the residuary provision of C.R.C.P. 60(b)(5) as that is the only provision under C.R.C.P. 60(b) that would permit the court to rule on a futility standard.

interplay between Fed. R. Civ. P. 15(a) and Fed. R. Civ. P. 60(b)(6), which blended the liberal standard for amending pleadings with the stricter approach generally applicable to motions for postjudgment relief under Fed. R. Civ. P. 60(b)'s residuary clause. *See, e.g.*, *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) ("[P]ostjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15."); *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 629 (7th Cir. 2020) ("Although Rules 59(e) and 60(b) provide extraordinary remedies for exceptional circumstances, we review post-judgment motions for leave to amend according to the Rule 15 standard when a district court enters judgment at the same time it first dismisses a case.").

¶ 43 To the extent that it dispensed with the traditional prerequisites for obtaining relief under C.R.C.P. 60(b)(5), *Schaden*'s approach now appears irreconcilable with the United States Supreme Court's holding in *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). There, the Supreme Court rejected a "hybrid standard" for reviewing a postjudgment motion to amend a complaint and instead applied a two-step analysis under which "a

27

party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." *Id.* at 210, 214. In holding that "satisfaction of Rule 60(b)(6) necessarily precedes any application of Rule 15(a)," *BLOM Bank* emphasized that "[a] party seeking Rule 60(b)(6) relief must always demonstrate 'extraordinary circumstances' justifying relief" and noted that a contrary holding would be incompatible with the "long line of precedents" narrowly construing the federal rule's residuary clause. *Id.* at 213-15.

¶ 44    *BLOM Bank* stresses the importance of finality, along with reiterating the "extraordinary circumstances" test when seeking relief under Fed. R. Civ. P. 60(b)(6). This fits well with Colorado's steady march toward streamlining litigation and reducing costs for litigants. To that end, recent changes in Colorado procedure encourage — indeed, require — parties to show more of their cards earlier in the case, with the express goal of increasing efficiency for courts and parties. Notice pleading, for example, has been jettisoned in favor of the more demanding "plausibility" standard. *See Warne v. Hall*, 2016 CO 50, ¶ 24. Amendments to Colorado's case management, discovery, and disclosure rules, too, have

28

"endeavor[ed] to foster a new culture and paradigm for handling civil cases in a way that will be faster and less expensive."  Richard P. Holme, *New Pretrial Rules for Civil Cases — Part II: What Is Changed*, 44 Colo. Law. 111, 111 (July 2015) (discussing efficiency-driven changes to C.R.C.P. 16 and C.R.C.P. 26).

¶ 45     The apparent divide between *Schaden* and *BLOM Bank* is also significant because the Colorado Supreme Court has traditionally aligned its understanding of C.R.C.P. 60(b)(5) with the United States Supreme Court's interpretation of Fed. R. Civ. P. 60(b)(6).  *See, e.g., A.P.,* ¶¶ 21-24; *Davidson,* 16 P.3d at 237-38; *Canton Oil Corp. v. Dist. Ct.,* 731 P.2d 687, 694 & n.6 (Colo. 1987).  This longstanding reliance on federal precedent not only reflects the substantial textual similarities between the state and federal rules but also advances Colorado's policy of discouraging forum shopping, *see AE, Inc. v. Goodyear Tire & Rubber Co.,* 168 P.3d 507, 511 (Colo. 2007), which can occur when "vastly different outcomes result from nothing more than a choice of forums." *Warne,* ¶ 17.

¶ 46     In the wake of *BLOM Bank,* and in the absence of a clear break in *Schaden* from the Colorado Supreme Court's historical reliance on analogous federal precedent when interpreting and applying

C.R.C.P. 60(b)(5), I worry that Colorado's district courts will be left unsure how to balance the seemingly competing demands of C.R.C.P. 15(a) and 60(b)(5) when deciding whether to provide leave to amend a complaint after judgment has been entered. To the extent *Schaden* suggests that a postjudgment motion to amend a complaint need not establish extraordinary circumstances before qualifying for relief under C.R.C.P. 15(a), I do not believe that it can be squared with *BLOM Bank*'s interpretation of Fed. R. Civ. P. 60(b)(6). And while the Colorado Supreme Court is free to interpret its own procedural rules in a manner that diverges from federal precedent, *see Warne*, ¶ 17, *Schaden* did not do so explicitly. Nor did the Colorado Supreme Court grapple with its many previous exhortations that C.R.C.P. 60(b)(5) is not a substitute for appeal, *see A.P.*, ¶ 23, and that it should be construed narrowly to "give scrupulous consideration to our strong policies favoring the finality of judgments," *State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785, 791 (Colo. 1996).

¶ 47 Without recounting the facts outlined in the majority opinion, I believe it is self-evident that Smith's request for postjudgment relief under C.R.C.P. 60(b)(5) would have failed under the *BLOM Bank*

standard because it was not based on extraordinary circumstances. Rather, in his response to Terumo's motion to dismiss, Smith conceded that he "ha[d] the information to plead . . . additional facts" and suggested that he could include those facts in an amended complaint if the district court determined that he had failed to plead a cognizable injury. I struggle to see how these circumstances — in which the plaintiff intentionally omitted information he believed would successfully counter the motion to dismiss, offering to add it only after the case was dismissed for lack of subject matter jurisdiction — are sufficiently "extraordinary" to overcome the strong interests in both efficiency and maintaining the finality of judgments. Indeed, "extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008).

¶ 48 Because of the apparent inconsistency between the Colorado Supreme Court's application of C.R.C.P. 60(b)(5) in *Schaden* and the United States Supreme Court's interpretation of Fed. R. Civ. P. 60(b)(6) in *BLOM Bank*, I urge the Colorado Supreme Court to clarify whether a plaintiff who seeks to amend his complaint after

31

final judgment is entered must demonstrate "extraordinary circumstances" before being permitted to do so.